UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| RAEMON SMITH, # 622486, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:10-cv-774 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| MARY BERGHUIS, | ) | **OPINION** |
| | ) | |
| Respondent. | ) | |

This is a habeas corpus proceeding brought *pro se* by a former state prisoner[1] pursuant to 28 U.S.C. § 2254. On August 31, 2007, an Oakland County Circuit Court jury found petitioner guilty of armed robbery, Mich. Comp. Laws §750.529, and first-degree home invasion, Mich. Comp. Laws § 750.110a(2).[2] On September 24, 2007, petitioner was sentenced as an habitual offender, second felony offense, to concurrent sentences of 9 ½ to 30 years' imprisonment on these convictions. After unsuccessful attempts to overturn his convictions and sentence in state court, petitioner filed this habeas corpus petition. Petitioner seeks federal habeas corpus relief on the same seven grounds rejected by the Michigan Court of Appeals:

---

[1]On May 12, 2016, petitioner was released from prison on parole. Petitioner was "in custody" when he filed his habeas corpus petition. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). This Court obtained jurisdiction when the petition was filed and the matter has not been rendered moot by petitioner's subsequent release from prison on parole. *See Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968); *Jones v. Cunningham*, 371 U.S. 236, 238 (1963).

[2]Petitioner was tried with codefendant Jerry Swain. Swain's jury found him guilty of armed robbery, first-degree home invasion, and two felony firearm counts.

I.   The evidence presented at trial was insufficient to support the jury's verdict finding petitioner guilty of first-degree home invasion and armed robbery in violation of his rights under the Fourteenth Amendment's Due Process Clause.

II.   The jury's verdict was coerced by the trial court's refusal to declare a hung jury and by a substantial and coercive deviation from the *Allen* charge.

III.   The trial court abused its discretion by denying petitioner's motion for substitute counsel.

IV.   Petitioner was denied his Sixth Amendment right to cross examine an important prosecution witness on issues relevant to his bias and credibility.

V.   Petitioner's rights under the Fourteenth Amendment's Due Process Clause were violated when the trial court judge essentially increased petitioner's minimum sentence because he had exercised his right to a jury trial rather than admitting his responsibility.

VI.   The trial court abused its discretion by denying petitioner's request for a departure below Michigan's sentencing guidelines.

VII.   Petitioner was denied his right to sentencing based on accurate information because his guideline score was incorrect.

(Petition, ECF No. 1-1, PageID.16).   Respondent argues that the petition should be denied for lack of merit.   (Answer at 13-43, ECF No. 5, PageID.104-34).

After review of the state-court record, the Court finds that petitioner has not established grounds for federal habeas corpus relief.   He has not shown that the state court decisions rejecting the grounds raised in the petition "were contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or that they were "based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding[s]." 28 U.S.C. § 2254(d).  The petition will be denied for lack of merit.  The Court will enter an order denying a certificate of appealability.

## Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the

reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a

right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not

suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013)

## Findings of Fact

### A.   District Court Proceedings

Petitioner was charged with armed robbery and first-degree home invasion. (ECF No. 7, 11)  He received a preliminary examination in 46th District Court in Oakland County.  (ECF No. 8-10).  Judge Stephen Cooper bound over petitioner for trial in Oakland County Circuit Court on all charges.  (ECF No. 10).

### B.   Circuit Court Proceedings

Petitioner's trial began on August 24, 2007, and it concluded with the jury's verdict on August 31, 2007, finding him guilty of armed robbery and first-degree home invasion.  (Trial Transcripts (TT I-V),[3] ECF No. 12, 23-1, 23-2, 23-3, 23-4).

On November 13, 2006, Ethel Baker, Dorothy King, and Martha McCracken came to Pastor Ananias Davis's residence.  Pastor Davis was 90 years old, and he lived with his son and two grandsons.  (TT III, 7, ECF No. 23-2, PageID.317).  He testified that he did not invite anyone into his home on November 13, 2006, other than Ethel Baker, Dorothy King, and Martha McCracken.  (TT III, 11, PageID.321).  Trenton Major, Pastor Davis's youngest grandson, was home at that time.  Trenton did not have

---

[3]The court reporter combined the record of proceedings for August 27 and August 31, 2007, into a single transcript.  (TT II, ECF No. 23-1).

In addition, it should be noted that there are no PageID citations herein for the references to the initial day of trial (TT I, ECF No. 12).  Respondent filed the paper transcript, but there is no electronic counterpart.

permission to invite any of his friends into Pastor Davis's home.  (TT III, 10-11, 59-60, PageID.320-21, 369-70).

Pastor Davis had been the pastor of the Welcome Baptist Church for 41 years. (TT III, 8, PageID.318).  Ms. Baker, Ms. King, and Ms. McCracken were women on the church's anniversary committee.  Each year, the members of the church celebrated the anniversary of Pastor Davis's arrival by providing him with a monetary gift.  (TT III, 9-10, PageID.319-20).   The parishioners held a fundraiser in October and a Banquet in November.  After the November banquet, the members of the anniversary committee would bring the money to Pastor Davis's house and give it to him.  On November 13, 2006, the three women were delivering more than ten thousand dollars in cash and more than five thousand dollars in checks.  (TT I, 145-48).  The money had been sorted and labeled with notes in Ms. Baker's handwriting and it had been kept in an envelope that also had her handwriting on it.  (TT I, 162-64).

When Pastor Davis and the three women were seated at a table in his dining room, Ethel Baker took the bag with the money out of her briefcase and put it down on the table.  (TT I, 161-62).  The money was taken out of the bag and counted.  The money was placed back in the bag and passed over to Pastor Davis.  The group began a prayer.  (TT I, 165-66; TT III, 14, PageID.324).  It was at this time that Mr. Swain entered the room.  (TT III, 14, PageID.324).  He had a gun in his hand and was demanding the money.  Petitioner came in behind him.  Petitioner appeared to be backing up Mr. Swain.  He appeared to have something on him because he never took his hands out of his pockets.  (TT I, 166-73; TT II, 94, ECF No. 23-1, PageID.254).

-7-

Swain picked up the bag of money and backed out of the room with the money in one hand and the gun in the other.  Petitioner left Pastor Davis's residence with Mr. Swain. (TT I, 166-78, 188; TT II, 24-40, 91-93, 121-22, PageID.184-200, 251-53, 281-82; TT III, 15-28, 44-46, 71, 74, PageID.325-38, 354-56, 381, 384).

Ms. King went out of the house.  She happened to see two police officers and flagged them down.  She related what had happened.  (TT II, 70-71, 85, PageID.230-31, 245; TT III, 171, PageID.481).  She pointed in the direction the two men had fled.  (TT III, 99, PageID.409).  The officers observed two suspects running away.  (TT III, 105, 125, 173, 175-76, PageID.415, 435, 483, 485-86).  Petitioner was apprehended near the corner of Buttercrest and Nine Mile.  (TT III, 151, 188,  PageID.461, 498).  The officers recovered the envelope containing the money and checks at the corner of Buttercrest and Nine Mile Road.  (TT III, 143, 193, PageID.453, 503).  Mr. Swain turned and ran away.  (TT III, 186, PageID.496).  Mr. Swain was later found hiding in a boat in a back yard; he was arrested.  (TT III, 110-12, PageID.420-22).  He later showed the police the location where he had hidden his gun.  (TT III, 118, PageID.428).

After the close of proofs, the attorneys delivered their closing arguments. Petitioner's theory was that he had permission to be present in the home and that he had not participated in the robbery.   Judge O'Brien delivered the jury instructions. There were no objections.  (TT IV, 24-25, ECF No. 23-3, PageID.576-77).

Shortly after the jury began deliberating the court received notes from the foreman indicating that it was deadlocked.  Judge O'Brien noted that the jury had not deliberated for very long.  He instructed the jury to continue deliberating.  Jurors were

instructed to keep an open mind and work together, but they were not to change their opinions simply to reach a resolution. (TT V, 5-7, 12-14, ECF No. 23-4, PageID. 585-87, 592-94). The next day, the jury returned its verdict finding petitioner guilty of first-degree home invasion and armed robbery. (TT II, 142-44, PageID.302-04).

On September 24, 2007, Judge O'Brien conducted a sentencing hearing. (Sentencing Transcript (ST), ECF No. 17). Petitioner conceded that the presentence report was factually accurate. (ST, 3). Petitioner argued that he should receive a downward departure from Michigan's sentencing guidelines because Pastor Davis, Ms. Baker, and Ms. McCracken had provided statements to the effect that a lengthy sentence was not necessary, and while petitioner had been present in Pastor Davis's house, he had not taken "untoward action towards the complaining witnesses in this case." (ST, 4).

The prosecution argued in favor of scoring offense variable (OV) 10 at 15 points based on predatory conduct, but acknowledged that in Swain's case the score had been 10 rather than 15. (ST, 6). Petitioner's attorney argued in favor of an OV 10 score of zero. (ST, 7). The court found that a score of 10 on OV 10 was appropriate. (ST, 7).

The prosecutor argued in favor of a score of 5 points on OV 2 because petitioner's co-defendant had possessed a gun. (ST, 6). Petitioner's attorney argued that OV 2 "should not be scored." (ST, 7). The court found that 5 points for OV 2 was appropriate. (ST, 7-8).

The prosecutor argued that no downward departure was appropriate because the offenses by Swain and petitioner were different in only a minimal way. (*See* ST, 8-9).

Judge O'Brien found that no downward departure from the guidelines was warranted. (ST, 9).

Judge O'Brien sentenced petitioner as an habitual offender, second felony offence, to concurrent sentences of 9 ½ years to 30 years' imprisonment.  (ST, 10; Judgment of Sentence Commitment to Corrections Department, found in Michigan Court of Appeals record, ECF No. 18).  He noted that letters and comments by the victims and others that were supportive of petitioner had already been taken into account because they were the primary reason that he had not imposed an upward departure from the sentencing guidelines:

> If I – well, once again, I don't punish someone for going to trial but if I give you the bottom then I am not affording myself an opportunity to reward someone who has taken responsibility.  You don't know this sir, but whether – you have been blessed today.  You are not familiar with all the letters and comments that the family of Mr. Swain has expressed on his behalf, that has trickled over to affect you favorably.  I will not belabor the point any further but just rest assured sir, and I've got a whole lot of things written here about how indeed you have been blessed, not only because your sentence is not going to be as hard as it was going to be before I read all their letters and comments and all the victims speaking for you, but more importantly, whether you do something with it remains to be seen.  So there's people out there that care about you is all I'm saying.
>
> I won't give you nine years but I will do as – quite favorably nine and a half years to thirty years, credit for three hundred fifteen days, that is respect to both counts.  That's a harsh sentence but understand it would have been a lot worse had you not had the blessing of people that care for you.

(ST, 9-10).

### C.    Subsequent Proceedings

Petitioner pursued an appeal in the Michigan Court of Appeals.  Petitioner raised the issues that he is now raising in his habeas corpus petition.  (Defendant-Appellant's Brief at ix-x, Statement of Questions Presented, found in Michigan Court of Appeals record, ECF No. 18).  On July 16, 2009, the Michigan Court of Appeals issued its decision affirming petitioner's convictions and sentence.  (7/16/09 Op., ECF No. 18; *see also People v. Smith*, No. 284828, 2009 WL 2136903 (Mich. Ct. App. July 16, 2009).

Petitioner filed an application for leave to appeal in Michigan's highest court on the issues rejected by the Michigan Court of Appeals.  (Defendant-Appellant's Application for Leave to Appeal at xi-xii, Statement of Question Presented, ECF No. 19).  On November 23, 2009, the Michigan Supreme Court denied petitioner's application for leave to appeal.  (11/23/09 Order, ECF No. 19).

On August 4, 2010, petitioner filed his petition for federal habeas corpus relief. (ECF No. 1).

### <u>Discussion</u>

### I.    Sufficiency of the Evidence

In Ground I, petitioner challenges the sufficiency of the evidence supporting his convictions for armed robbery and first-degree home invasion. Petitioner argues that the evidence was insufficient to support his conviction for first-degree home invasion because the "only reasonable inference" from the testimony at trial was that petitioner had entered Pastor Davis's residence with permission because Trenton Major let

petitioner and Mr. Swain into the house.  (Petitioner's Brief at 9, ECF No. 1-1, PageID.40).  Petitioner also argues that there was insufficient evidence that he had used force to gain entry.  (*Id.* at 12-13, PageID.42-43).  He argues that the evidence was insufficient to support his armed robbery conviction as an aider or abettor because he had merely been present inside Pastor Davis's house.  (*Id.* at 13-15, PageID.43-45).

The Due Process Clause of the Fourteenth Amendment requires the prosecution to prove each element of an offense beyond a reasonable doubt.  *Victor v. Nebraska*, 511 U.S. 1, 5 (1994); *In re Winship*, 397 U.S. 358, 364 (1970).  A federal court is bound by the substantive elements of the criminal offense as defined by state law.  *Jackson v. Virginia*, 433 U.S. 307, 324 n.16 (1979); *see Parker v. Renico*, 506 F.3d 444, 447-48 (6th Cir. 2007).  Furthermore, a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.  *Bradshaw v. Richey*, 546 U.S. 74, 76-78 (2005).

The elements of first-degree home invasion are:  (1) that the defendant broke and entered into the dwelling or entered the dwelling without permission; (2) that when the defendant did so, he either intended to commit a felony, larceny, or assault or actually committed a felony, larceny, or assault while entering, exiting or present in the dwelling; and (3) that when the defendant entered, was present in, or was leaving the dwelling, he was armed with a dangerous weapon or another person was lawfully in the dwelling.  *People v. Sands*, 680 N.W.2d 500, 503 (Mich. Ct. App. 2004); Mich. Comp. Laws § 750.110a(2); *see also Claudio v. Berghuis*, No. 1:09-cv-94, 2015 WL 869153, at * 11 (W.D. Mich. Feb. 27, 2015).  "[A]ny amount of force used to open a door

or window to enter the building, no matter how slight, is sufficient to constitute a breaking." *People v. Toole*, 576 N.W.2d 441, 443 (Mich. Ct. App. 1998).  The term "without permission" is defined  as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling."  MICH. COMP. LAWS § 750.110a(1)(c).

Petitioner was charged with aiding and abetting in the armed robbery committed by Swain.  MICH. COMP. LAWS § 767.39.  "The elements of armed robbery are: (1) an assault, (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute." *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999).

One who counsels, aids or abets in the commission of an offense may be tried and convicted as if he had directly committed the offense.  *People v. Palmer*, 220 N.W.2d 393, 396 (Mich. 1974).  Mere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor.  *People v. Wilson*, 493 N.W.2d 471, 476 (Mich. Ct. App. 1992) (citing *People v. Rockwell*, 470 N.W.2d 673, 676 (Mich. Ct. App. 1991)).  To be convicted of aiding and abetting, a person must "either himself possess the required intent or participate while knowing that the principal possessed the required intent." *People v. Rockwell*, 470 N.W.2d at 676.  "An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in

the planning or execution of the crime, and evidence of flight after the crime." *People v. Carines*, 597 N.W.2d at 135.

A Section 2254 challenge to the sufficiency of evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.*; *see Cavazos v. Smith*, 132 S. Ct. 2, 3-4 (2011) (*per curiam*) (*Jackson v. Virginia* "makes clear that it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial."). Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n. 16; *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011).

The Michigan Court of Appeals ruled directly on this claim. Review of this issue must be conducted under the AEDPA standard, which the Sixth Circuit has described as "very deferential." *Durr v. Mitchell*, 487 F.3d 423, 448 (6th Cir. 2007). Review of challenges to the sufficiency of evidence under the *Jackson v. Virginia* standard proceeds under the "unreasonable application" prong of AEDPA. *See Saxton v. Sheets*,

547 F.3d 597, 602 (6th Cir. 2008).  Such an argument is properly understood as an allegation that the state court's decision resulted in an unreasonable application of *Jackson v. Virginia.  See Keys v. Booker*, 798 F.3d 442, 450 (6th Cir. 2015).  Review in such cases "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor."  *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007).  This standard presents a "nearly insurmountable hurdle" for the habeas petitioner.  *Davis v. Lafler*, 658 F.3d at 534.  "Adding to this extremely high bar are the stringent and limiting standards of AEDPA."  *Id.*

The Sixth Circuit has summarized the "double layer of deference" given the state-court decisions in the context of sufficiency-of-the-evidence claims:

> First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979).  In doing so, we do not re-weigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury.  *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993).  Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution.  Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable.

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

In this case, the Michigan Court of Appeals articulated the appropriate standard under *Jackson v. Virginia*.  (Op. at 1, ECF No. 18).  The Court of Appeals found that the evidence was sufficient to support the jury's verdict finding petitioner guilty of first-degree home invasion:

> Defendant challenges only one element of his first-degree home invasion conviction: whether he entered Pastor Ananias Davis's house "without permission."   MCL 750.110a(1)(c) defines "without permission" as "without having obtained permission to enter from the owner or lessee of the dwelling or from any other person lawfully in possession or control of the dwelling." Defendant asserts that he was present in the home pursuant to permission granted by Pastor Davis's grandson, who lived there.  However, Pastor Davis testified that he did not know defendant, that defendant did not have his permission to be in his home, and that his grandson did not have permission to admit others to his home without his approval.  A victim's testimony alone may be sufficient evidence to support the elements of a crime, *People v. Taylor*, 185 Mich. App. 1, 8, 460 N.W.2d 582 (1990), and the prosecutor was not required to negate defendant's theory.

(*People v. Smith*, 2009 WL 2136903, at * 1) (footnote omitted)).

The Michigan Court of Appeals also found that there was sufficient evidence to support the jury's verdict finding petitioner guilty of armed robbery:

> Defendant argues that the evidence was insufficient to convict him for armed robbery, asserting that he was only shown to be present during the armed robbery and that he did not assist or even possess a weapon. However, defendant was convicted of aiding and abetting.   Mere presence-even with knowledge of the offense-is insufficient to convict a person of aiding and abetting; he "must either have possessed the required intent or have participated while knowing that the principal had the requisite intent." *People v. Wilson*, 196 Mich.App. 604, 614, 493 N.W.2d 471 (1992). An aider and abettor's state of mind may be inferred from the facts and circumstances including a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. *People v. Carines*, 460 Mich. 750, 757-758, 597 N.W.2d 130 (1999). Here, defendant entered the house with his codefendant, blocked a doorway and

appeared to be "backing up" his codefendant and preventing the victims from escaping, and remained with his codefendant while fleeing until stopped by the police.  The facts and circumstances surrounding the robbery support the inference that defendant either possessed the intent to permanently deprive Pastor Davis of the money or that he participated in robbery while knowing that the Swain had that intent.  *Wilson*, *supra* at 614, 493 N.W.2d 471.

(*People v. Smith*, 2009 WL 2136903, at * 1).

A rational fact-finder could easily find that the evidence presented was sufficient to find petitioner guilty beyond a reasonable doubt of the crimes of armed robbery and first-degree home invasion.  The Court finds that the decision of the Michigan Court of Appeals rejecting petitioner's challenges to the sufficiency of the evidence supporting his criminal convictions easily withstands scrutiny under the double layers of deference to which it is entitled under AEDPA.

## II.   Due Process

In Ground II, petitioner argues that the jury's verdict was coerced by the trial court's refusal to declare a hung jury and by a coercive instruction.  (Petitioner's Brief at 16-26, ECF No. 1-1, PageID.46-56).  The only Supreme Court cases cited in this section of petitioner's brief are *Allen v. United States*, 164 U.S. 492 (1896) and *Jenkins v. United States*, 380 U.S. 445 (1965).  (Petitioner's Brief at 16, 20, PageID.46, 50).

In *Allen v. United States*, the Supreme Court held that the trial court did not err in giving a supplemental instruction to a deadlocked jury.  164 U.S. at 501.  The constitutionality of an *Allen* charge turns on whether the charge in question was "coercive."  *Lowenfield v. Phelps*, 484 U.S. 231, 241 (1988).  An *Allen* charge must be

reviewed "in its context and under all the circumstances." 484 U.S. at 237; *accord Hardaway v. Robinson*, 655 F.3d 445, 448 (6th Cir. 2011).

Petitioner's reliance on *Jenkins* is misplaced. The Supreme Court's decision was based on its supervisory power, rather than constitutional law. *See Early v. Packer*, 537 U.S. 3, 10 (2003) ("[O]ur ruing in *Jenkins v. United States* was based on our supervisory power over the federal courts, and not on constitutional grounds.") (quoting *Lowenfield v. Phelps*, 484 U.S. at 239 n.2). Cases in which the Supreme Court found that a particular instruction was coercive under its supervisory power fail to provide clearly established law that is applicable to state court proceedings. *Early*, 537 U.S. at 10.

"Because of the fact-intensive nature of the inquiry into jury coercion, federal habeas review is particularly deferential to the findings of the state court in this area of the law." *Phelps v. Smith*, 517 F. App'x 379, 383 (6th Cir. 2013). For example, in *Early v. Packer*, the Supreme Court approved a state court decision that held that there was no coercion where, "after 28 hours of deliberations," the judge read aloud a note from the jury identifying the sole hold-out, and indicated that the other jurors questioned "her ability to understand the rules and her ability to reason." 537 U.S. at 4. The Supreme Court held that the state court decision was not and "could not" be found contrary to, or an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. *Id.* at 11. "By mistakenly making the 'contrary to' determination and then proceeding to a simple 'error' inquiry, the Ninth Circuit evaded § 2254(d)'s requirement that decisions which are not 'contrary

to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law, or based on 'an *unreasonable* determination of the facts.' " 537 U.S. at 10. The Supreme Court ended its opinion with further emphasis on the deference due the state court's decision finding no constitutional violation: "Even if we agreed with the Ninth Circuit . . . that there was jury coercion here, it is at least reasonable to conclude that there was not, which means that the state court's determination to that effect must stand." *Id.*

It is against this backdrop that the decision of the Michigan Court of Appeals finding no constitutional violation must be considered. The record shows that shortly after the jury began deliberating they indicated that they were deadlocked. Judge O'Brien instructed the jury to continue deliberating. Jurors were to keep open minds and discuss the matter, but they should not change their opinion simply to reach a resolution. The Michigan Court of Appeals rejected petitioner's argument that the jury's verdict had been coerced:

> We afford great deference to the trial court's decision whether to declare a jury deadlocked. *People v. Lett*, 466 Mich. 206, 213, 644 N.W.2d 743 (2002). The trial court may require the jury to continue deliberations, but it may not threaten to require the jury to deliberate for an unreasonable time, nor may it induce a juror to give up his or her opinion solely for the sake of achieving unanimity. *People v. Hardin*, 421 Mich. 296, 312, 365 N.W.2d 101 (1984). In other words, the trial court may not pressure, threaten, embarrass, or otherwise coerce a decision. *Id.* at 315, 365 N.W.2d 101; *People v. Sullivan*, 392 Mich. 324, 334, 220 N.W.2d 441 (1974).
>
> Here, the jury indicated that it was deadlocked shortly after it had started deliberating. The trial court reasonably surmised that the jury

might be able to reach a verdict after open-minded deliberations. Significantly, the trial court emphasized the importance of deliberating by working together to reach consensus, rather than agreeing just to agree. The trial court's additional instructions differed slightly from the verbatim text of CJI2d 3.12, which is ordinarily to be given to deadlocked juries. *People v. Pollick*, 448 Mich. 376, 382 n. 12, 531 N.W.2d 159 (1995). However, the instruction given contained no pressure, threats, embarrassing assertions, or other wording that would constitute coercion, and the trial court did not require, or threaten to require, the jury to deliberate for an unreasonable length of time or at unreasonable intervals. *Hardin*, supra at 315, 365 N.W.2d 101.

(*People v. Smith*, 2009 WL 2136903, at * 2).

The Court finds that petitioner has not shown that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## III.   Substitute Defense Counsel

In Ground III, petitioner argues that the trial court abused its discretion by denying a request for substitute defense counsel. Petitioner cites only state law in support of this argument. (Petitioner's Brief at 27-29, ECF No. 1-1, PageID.57-59).

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to ... the Assistance of Counsel for his defense." U.S. Const. amend. VI. The Supreme Court has held that "an element of this right is the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006)  [T]he right to counsel of choice does not extend to defendants who require

-20-

counsel to be appointed for them." 548 U.S. at 151. "[T]he purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial . . . ." *Wheat v. United States*, 486 U.S. 153, 159 (1988) (citations and quotations omitted). The Sixth Amendment does not guarantee a criminal defendant a "meaningful relationship" with counsel. *Morris v. Slappy*, 461 U.S. 1, 14 (1983).

The Supreme Court has not yet articulated a standard for deciding a Sixth Amendment claim based on a habeas petitioner's allegation that the trial court denied his request for substitute counsel. *See Griffin v. Warden, Noble Corr. Inst.*, No. 2:14-cv-857, 2016 WL 1090960, at * 7 (S.D. Ohio Mar. 21, 2016) (collecting cases denying habeas corpus relief based on the absence of any decision contrary to or involving an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States); *accord Woods v. Donald*, 135 S. Ct. at 1377. "[N]ovelty alone—at least insofar as it renders the relevant rule less than 'clearly established'—provides a reason to reject it under AEDPA." *Premo v. Moore*, 562 U.S. at 127.

Here, on the second day of trial, petitioner told his attorney that he was dissatisfied with counsel's representation. (TT II, 4, ECF No. 23-1, PageID.164). Petitioner advised Judge O"Brien that he wanted to cancel the whole trial and start over with a new attorney. (TT II, 7, PageID.167). Judge O'Brien found that petitioner's request was untimely. Further, he found no evidence supporting petitioner's assertion that his trial counsel had been ineffective. (TT II, 12-17, PageID.172-77).

The Michigan Court of Appeals held that the trial court did not abuse its discretion when it denied petitioner's request for substitute counsel:

> The record shows that defense counsel met with defendant, sent defendant copies of his filings, and explained to defendant how he would pursue defendant's defense. Nothing in the record suggests that there was a legitimate difference of opinion between defendant and defense counsel over any "fundamental trial tactic" in the case. *See People v. Bauder*, 269 Mich.App. 174, 193, 712 N.W.2d 506 (2005). Defendant's disagreements arose from matters of professional judgment and trial strategy, such as the manner in which witnesses were questioned. *People v. Rockey*, 237 Mich.App. 74, 76, 601 N.W.2d 887 (1999); *People v. Traylor*, 245 Mich.App. 460, 462, 628 N.W.2d 120 (2001). Defense counsel's decision not to request a bond reduction under a 180-day rule also falls within the categories of professional judgment and trial strategy. Finally, defendant made his request for substitute counsel during the second day of trial, despite, as the trial court noted, prior opportunities to make such a request and further despite no showing that the judicial process would not be unreasonably disrupted.

(*People v. Smith*, 2009 WL 2136903, at * 2).

Petitioner has not shown that the decision of the Michigan Court of Appeals rejecting this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## IV. Confrontation Clause

In Ground IV, petitioner argues that the trial court's evidentiary ruling during a portion of the cross-examination of Pastor Davis violated petitioner's rights under the Sixth Amendment's Confrontation Clause. Specifically, he argues that the court's ruling prevented his attorney from questioning Pastor Davis about borrowing church

money to pay for a lawyer for his grandson, whether his grandson was involved in the robbery, and attempting to show bias that Pastor Davis was protecting his grandson. (Petitioner's Brief at 30-34, ECF No. 1-1, PageID.60-64).

"The Sixth Amendment's Confrontation Clause, which is binding on the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Ohio v. Clark*, 135 S. Ct. 2173, 2179 (2015) (quoting U.S. CONST. amend. VI).  The Supreme Court's "Confrontation Clause cases fall in two broad categories: cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or the trial court on the scope of cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 18 (1985) *(per curiam)*.  Petitioner's challenges to the trial court's rulings fall within the latter category.

Cross-examination is a "primary interest" secured by the Confrontation Clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).  "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Fensterer*, 474 U.S. at 20.

Trial judges retain wide latitude in imposing reasonable restrictions on cross-examination.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  These restrictions may arise from "concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Id.*

The Michigan Court of Appeals rejected petitioner's Confrontation Clause claims:

> In fact, the trial court permitted defendant considerable latitude to inquire into collateral matters bearing on Pastor Davis's credibility and possible bias. Defense counsel inquired directly into the possible involvement of Davis's grandson in the robbery, including the facts that Davis retained an attorney for his grandson and loaned his grandson money with which to pay the attorney. The trial court precluded examination into matters that were, at best, only marginally relevant, like the amount of the loan. Pastor Davis was directly asked if he wanted his grandson to avoid being charged for his alleged involvement in the robbery, and he replied, "Well if he's found guilty I'll let the folks decide here." Neither the Confrontation Clause nor due process confers on a defendant an unlimited right to cross-examine on any subject. *People v. Hackett*, 421 Mich. 338, 347, 365 N.W.2d 120 (1984). The limitations that the trial court placed on defendant's cross-examination were reasonable. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L.Ed.2d 674 (1986).

(*People v. Smith*, 2009 WL 2136903, at * 3). The decision of the Michigan Court of Appeals finding no constitutional violation easily withstands scrutiny under 28 U.S.C. § 2254(d).

## V.     Sentencing

The three remaining grounds in the petition are challenges to petitioner's sentence. The Michigan Court of Appeals rejected all petitioner's challenges to his sentence.

### A.     <u>Alleged Due Process Violation</u>

Ground V is petitioner's argument that his rights under the Fourteenth Amendment's Due Process Clause were violated because the trial judge "essentially increased his minimum sentence based upon [petitioner's] exercise of his right to trial.

-24-

(Petitioner's Brief at 35-39, ECF No. 1-1, PageID.65-69) (citing *North Carolina v. Pierce*, 395 U.S. 711 (1969)).

*North Carolina v. Pierce* has no application to the facts of this case. The Supreme Court's decision in *Pierce* dealt with limitations with regard to resentencing under the Fourteenth Amendment's Due Process Clause when a conviction has been overturned, and the defendant is convicted of the same offence when the matter retried. 395 U.S. at 716, 724-26.

The Michigan Court of Appeals rejected petitioner's argument that his sentence had been increased because he had exercised his right to a jury trial:

> While it is possible to interpret the trial court's remarks as an indication that it reserved the minimum sentence only for defendants who choose to plead guilty rather than exercise their right to a trial, it does not appear from the entire context that this is what the trial court actually meant or actually did. The trial court's comment was made after considering defendant's past criminal history and the context of the instant offense. The trial court explained at greater length that it had considered a number of pleas for leniency from the victims and from defendant's family and acceded to those pleas-just not all the way to the minimum sentence under the guidelines. It appears that the trial court simply intended the minimum sentence to be reserved for defendants who indicate in some way that they have "taken responsibility" for their actions. The trial court's quick and vague comment, when viewed in context, does not show that it considered "taking responsibility" to be synonymous with "pleading guilty." The trial court's remark was unfortunate, but the record does not show that defendant was punished in any way for exercising his right to a trial. We therefore sustain the sentence. *People v. Sickles*, 162 Mich.App. 344, 365-366, 412 N.W.2d 734 (1987).

(*People v. Smith*, 2009 WL 2136903, at * 4).

A presumption of correctness attaches to the state court's factual finding that petitioner was not punished in any way for exercising his right to trial. 28 U.S.C.

§ 2254(e)(1).  Petitioner has not addressed, much less carried, his burden of "rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see also Burt v. Titlow*, 134 S. Ct. at 15 ("The prisoner bears the burden of rebutting the state court's factual findings 'by clear and convincing evidence.' ").  Further, petitioner has not shown that the state court decision rejecting this claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings."  28 U.S.C. § 2254(d).

> ### B.    Denial of a Requested Downward Departure from Michigan's Sentencing Guidelines

Ground VI is petitioner's claim that the trial judge abused his discretion by denying the departure below Michigan's sentencing guidelines, as petitioner had requested.  (Petitioner's Brief at 70-74, ECF No. 1-1, PageID.65-69) (citing *People v. Babcock*, 666 N.W.2d 231 (Mich. 2003) and other decisions by Michigan's courts).  The Michigan Court of Appeals found no abuse of discretion.   "The trial court considered the victims' request for leniency and imposed a shorter sentence than it would have without the request.  There were no substantial and compelling reasons to justify a departure from the guidelines range." (*People v. Smith*, 2009 WL 2136903, at * 3).  Petitioner's claim that the trial court judge abused his discretion in denying petitioner's request for a downward departure is a state law claim that does not provide a basis for federal habeas corpus relief.  *See* 28 U.S.C. § 2254(a).

C.   <u>Sentencing Guidelines</u>

Ground VII is petitioner's claim that he was sentenced on the basis of inaccurate information because trial court incorrectly scored offense variable (OV) 10, exploitation of a vulnerable victim.  (Petitioner's Brief at 45-49, ECF No. 1-1, PageID.75-79).

Petitioner's claims that the sentencing guidelines were misscored is, standing alone, a claim that is not cognizable on habeas review.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.' " *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  Federal habeas corpus relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

Claims concerning the improper scoring of sentencing guidelines are state-law claims that typically are not cognizable in habeas corpus proceedings.  *See Kissner v. Palmer*, No. 16-1320, __ F.3d __, 2016 WL 3448153, at * 2 (6th Cir. June 23, 2016); *see also Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only.").

Petitioner disagrees with the factual findings made, as well as the inferences drawn, by the trial judge in scoring the offense variable 10.  As the Supreme Court made clear in *Townsend v. Burke*, 334 U.S. 736 (1948), an alleged error by the trial court in resolving a disputed factual question at sentencing does not constitute reliance on materially false information:

> Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

*Townsend*, 334 U.S. at 741.

Petitioner, through counsel, objected to the scoring of this and other offense variables at the sentencing hearing. The trial court heard petitioner's arguments found that they were not persuasive, and concluded that the score for OV 10 was correct. Moreover, the Michigan Court of Appeals rejected petitioner's argument:

> Defendant argues that the trial court inappropriately scored Offence Variable (OV) 10, MCL 777.40, "exploitation of a vulnerable victim," at ten points. Ten points should be scored if the "offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship or the offender abused his or her authority status." MCL 777.40(1)(b). The record showed that age was a factor: defendant planned to rob 90-year-old Pastor Davis and his elderly guests. Pastor Davis was vulnerable because there was a 68-year age difference between him and defendant, and he was in his home when the robbery occurred. Under the circumstances, the trial court reasonably found on the evidence of record that defendant singled out the victim due to his vulnerability based on his agedness.

(*People v. Smith*, 2009 WL 2136903, at * 4).

While petitioner disputes the trial court's findings, he has offered nothing to show that they were materially false. Accordingly, he falls far short of establishing a due process violation under *Townsend. See Cassarrubias v. Prelesnik*, No. 1:09-cv-1172, 2014 WL 1338172, at * 10 (W.D Mich. Mar. 31, 2014). Further, he has not satisfied his burden under 28 U.S.C. § 2254(d).

## VI.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDonnell*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on each of the grounds raised in his petition is debatable or wrong. *See Slack*, 529 U.S. at 484.  Accordingly, the  Court will enter an order denying petitioner a certificate of appealability.

## <u>Conclusion</u>

For the foregoing reasons, a judgment will entered denying the petition because it does not provide a basis for federal habeas corpus relief under 28 U.S.C. § 2254.

Dated:  August 25, 2016                       /s/ Paul L. Maloney
                                               Paul L. Maloney
                                               United States District Judge